UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO.  09-423-GFVT

JIMMY BROWNING,                                                    PETITIONER,

V.                                    **MAGISTRATE JUDGE'S**
                                      **REPORT AND RECOMMENDATION**

JOSEPH MEKO,
*Warden, Little Sandy Correctional Complex*,                      RESPONDENT.

## I. INTRODUCTION

Petitioner, Jimmy Browning, brings this *pro se* action for a Writ of Habeas Corpus pursuant

to 28 U.S.C. § 2254, to challenge his sentence in state court. [R. 1].  Consistent with local practice,

the matter is before the undersigned for a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).  For the following reasons, Browning's § 2254 petition [R. 1] should be DENIED.

## II. FACTUAL & PROCEDURAL BACKGROUND

The facts summarized by the Supreme Court of Kentucky in the unpublished opinion of

Browning v. Commonwealth of Kentucky, 2006 WL 435423 (Ky. 2006), are undisputed and

therefore entitled to a presumption of correctness.[1]  They state that:

> The Appellant, Jimmy Browning, and Ance Neace had been friends for years.  Both
> men dated the victim, Tamara Beverly, at different times.  Neace had been living
> with Tamara and their child until social services removed the child from their
> custody, placing him with Neace's mother and father.  During the custody dispute,
> Neace and Tamara became hostile towards each other, and in February of 2001,

---

[1]The state court's findings of fact are presumed to be correct unless they are rebutted by
clear and convincing evidence.  Fleming v. Metrish, 556 F.3d 520, 525 (6th Cir. 2009) (citing
Benge v. Johnson, 474 F.3d 236, 241 (6th Cir. 2007)).

Tamara obtained a domestic violence order against Neace.

On April 5, 2001, Neace and Tamara argued on the phone about the custody of their son. Allegedly, Tamara told Neace that she was going to take full custody of the child and bring charges against the Appellant [Browning] for molesting her youngest daughter. That night, Neace made a three-way phone call to Ms. Smith and the Appellant. During the conversation, Neace discussed the argument he and Tamara had earlier that day. The Appellant and Neace also then planned to get Tamara to go somewhere with them, do drugs, and have sex. Because Neace did not have a car, the Appellant agreed to pick him up and then they would go get Tamara.

On April 5, 2001, somewhere between the hours of 7:00 p.m., and 9:00 p.m., the Appellant and Neace picked Tamara up at her home. They went to a surface mine strip-job on top of a mountain to "snort" and "eat" some pills and drink some whiskey. Once on top of the mountain, the men took turns having sex with Tamara.

The Appellant claims he had sex with Tamara first and then got out of the truck so Neace could have his turn. Supposedly, after Neace and Tamara had sex, they got out of the car and went to the back of the truck. At that time, the Appellant fell asleep and remained asleep until he was awakened by Neace. The Appellant claims that Neace was then in a panic and told him that he had "done it" and wanted to "get the hell out of there." Neace told the Appellant that he and Tamara had gotten into an argument over their son; she claimed he was not the father, and he got so angry he "put her in the pond." Then they drove back to the Appellant's house. His mother, Joan Morton, and his wife, Christy, were there. Neace told them the story and threatened to say they were accomplices if they told anyone.

Sometime around 1:00 a.m., Neace allegedly called Ms. Smith and told her he "did it" and that the Appellant had helped. During this phone call, Neace told her about the murder and then the Appellant told her not to say anything about it or she would "be laying up there right where [Tamara] is."

The next couple of days following Tamara's disappearance, the police visited Neace and the Appellant several times. Both denied having seen Tamara. Then, Appellant's mother finally convinced him to tell the police what he knew about the murder. He contacted Detective John Sizemore and gave a complete statement. He then led police to the site. The police recovered the body and placed the Appellant under arrest for Tamara's murder.

Both the Appellant and Neace were indicted on May 15, 2001, in the Perry Circuit Court on one count of murder, one count of tampering with physical evidence, and one count of rape in the first degree.

Thereafter, the Appellant and the Commonwealth entered into a plea agreement for

2

a recommendation of a twenty year sentence in exchange for a plea of guilty to murder and his truthful testimony in the case against Neace. The rape charge was thereafter dismissed on motion of the Commonwealth in June of 2002. Subsequently, on August 23, 2002, a new Commonwealth's Attorney was appointed to proceed with the case. On December 18, 2002, after several delays, Judge Combs accepted the Appellant's plea and set the matter for final sentencing on January 22, 2003.

However, at the hearing for final sentencing on January 22, 2003, Judge Combs announced his rejection of the recommendation sentence and suggested a harsher punishment. The Appellant argued, without avail, that Judge Combs was bound by the plea and that the Appellant detrimentally relied upon the Court's words and actions in allowing his trial to be continued. The trial court then allowed the Appellant to withdraw his guilty plea and the matter was set for trial.

Consequently, on March 7, 2003, the new Commonwealth's Attorney sought and obtained a superseding indictment from the Perry County Grand Jury, charging the Appellant with one count of complicity to murder, and one count of complicity to tampering with physical evidence.

After several continuances, the trial started on August 5, 2003, with Judge Combs presiding. On the first day of trial, the jury was sworn in and opening statements were delivered. On the second day of trial, Judge Combs had a family emergency. He gave notice of the emergency to counsel for both sides and discussed options on how to proceed with the trial. Ultimately, Judge Combs contacted the Chief Regional Judge to request appointment of a special judge. Judge Samuel Wright, the Circuit Court Judge of Letcher County, was appointed as special judge. The Appellant then objected stating that Judge Combs was more familiar with the case and that it would be prejudicial to have a new judge enter the case. However, on the following day, Judge Wright took the case as ordered by the Chief Regional judge. The Appellant again objected to the case going forward, but Judge Wright proceeded with the trial.

During trial, the Commonwealth called several witnesses, including Ms. Smith. She was 19 years old at the time of trial and due to some mental health issues, the Commonwealth made a *motion in limine* as to the use of her mental health records. The court conducted an in-chambers hearing to discuss the admissibility of portions of the mental health records. In chambers, Ms. Smith stated that she had previously suffered from visual and auditory hallucinations, such as people calling her name. She also disclosed to the court that she was under the care of a mental health professional before and after the events surrounding the murder, but could not remember specifically if she was on any medication on April 5, 2011.
The Appellant argued that the mental health records went to the credibility of Ms. Smith's testimony and therefore, he should be able to question her about them. The

court ruled that the Appellant could not question her about the mental records except to ask her about what medications she was taking at the time of the incident.

Ms. Smith testified the Appellant and Neace were very angry during the phone conversation before the murder took place. She stated the Appellant said, "Hazard would be a hell of a lot better place if the bitch was dead." She also testified that Neace called her back around 1 a.m. on April 6, 2001, stating, "I did it. I killed her. Jimmy helped me." During the second conversation, the Appellant threatened that if she told anyone she would "be up there where she is." All of the statements were admitted into evidence over the Appellant's hearsay objections.

The Appellant cross-examined Ms. Smith about her medication and what she was taking during the time around the murder. She stated that she had been taking anti-depressants prior to, and after, the murder, but could not remember if she was taking medication during the time of this incident. However, she did adit to snorting pills such as Xanax, Lorcets, and Percocets during this time.

Neace also testified for the Commonwealth. Several times during direct and cross examination, Neace failed to remember what he had told Detective Duff during his confession interview. In an attempt to refresh his recollection, the Appellant wanted to play Neace's entire taped interview with the detective. The Appellant argued that even after Neace read the transcript, he could not remember certain statements that he had made during that interview and playing the entire tape would help. The trial court did not allow the tape to be played in its entirety. Instead, the trial court ruled that the Appellant could play portions of the tape that were inconsistent or contradictory with the testimony that Neace provided while on the stand.

At the close of the evidence, the court overruled the Appellant's motion for a directed verdict based on insufficiency of the evidence. The Appellant also objected to the Commonwealth's use of the video-taped testimony during their closing arguments. The court overruled the objections.

While discussing jury instructions, the Appellant asked for an instruction on complicity to second degree manslaughter due to intoxication. The motion was overruled.

The jury returned its verdict finding the Appellant guilty on both counts and recommended fifty (50) years on the murder charge and five (5) years on the tampering charge to run consecutively for a total of fifty-five (55) years. He was sentenced accordingly.

On October 23, 2006, the Supreme Court of Kentucky affirmed the decision of the state trial court. [R. 14-1]. Browning next filed a *pro se* collateral attack motion under Kentucky Criminal

4

Rules of Procedure (RCr) 11.42, alleging four (4) grounds of ineffective assistance of counsel. Those four (4) grounds were as follows: (1) failure to ensure a fast and speedy trial; (2) failure to object to certain pictures which Browning believed did not accurately depict the crime scene; (3) failure to request a directed verdict dismissal of the tampering with physical evidence charge; and (4) failure to procure concurrent sentences on two charges. [R. 14-19]. The Perry Circuit Court denied the motion without holding an evidentiary hearing. [R. 14-19]. On October 25, 2009, the Kentucky Court of Appeals affirmed the circuit court's decision. [R. 14-19]. The Court of Appeals found all grounds were conclusively refuted by the record. [R. 14-19].

Browning now brings this motion to vacate his sentence, raising arguments that will be addressed in the following order: (1) he was deprived of the opportunity to present a complete defense and confrontation under the Sixth and Fourteenth Amendments by state court's limitation of cross-examination; (2) he was deprived of a fair trial because the Commonwealth was allowed to introduce impermissible hearsay evidence; (3) he was denied due process resulting from the trial court's refusal to instruct on intoxication as a defense and on a lesser included offense; (4) he was denied right to due process under the Sixth and Fourteenth Amendments arising from the trial judge's mishandling of the guilty plea; (5) counsel was ineffective for failure to protect his right to a speedy trial; (6) counsel was ineffective for failure to object to photo(s) of crime scene; and (7) counsel was ineffective for failure to raise speedy trial violation on direct appeal. [R. 1].

## III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs federal habeas review of Browning's state court conviction. It provides, in pertinent part:

(d)     An application for a writ of habeas corpus on behalf of a person in custody
          pursuant to the judgment of a State court shall not be granted with respect to

5

> any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 412-413 (2000).  A state court decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  A federal court may not grant a writ of habeas corpus "simply because the state court issued a decision that erroneously or incorrectly applies clearly established law; rather, the state court's application of law must have been objectively unreasonable."  Ware v. Renico, 371 F.3d 862, 865 (6th Cir. 2004) (citing Williams, 529 U.S. at 410-11).  For the following reasons, the Court finds that Browning's claims did not result in a decision that was contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

## IV. DISCUSSION

### A. Cross-Examination of Ms. Smith

The first argument presented by Browning is that he was denied the right to a fair trial when the trial court limited the scope of his cross-examination of Ms. Smith. [R. 1; R. 17].  During trial,

6

Browning moved to have Ms. Smith's mental health records admitted into evidence to impeach the credibility of her testimony by questioning her about her medical diagnosis and doctor evaluations. [R. 14-1]. Specifically, he sought to question her regarding her mental condition or hallucinations. [R. 14-1]. Moreover, Browning argued that Ms. Smith's ability to recall the events on the night in question was relevant to the issue of whether he conspired with Ance Neace to kill Tamara Beverly. [R. 1-2]. Therefore, he should have had the right to attack Ms. Smith's credibility through the use of her mental health records, and more specifically, her hallucinations. [R. 1-2].

Browning now claims that the state trial court ruled that he could not question Ms. Smith about her mental health records and issues, only allowing him to cross-examine Ms. Smith about the medications she was taking at the time of the incident. [R. 1-2]. However, the trial court ruled that Browning could ask Ms. Smith about her drug use and anything that he could find to attack Ms. Smith's credibility, such as inconsistent testimony, but did not permit Browning to ask about specific medical issues, namely Ms. Smith's hallucinations. [R. 14-1]. On direct appeal, the Kentucky Supreme Court noted that Browning was allowed to review the medical records of Ms. Smith and show the court any impeachable, or exculpatory, evidence contained therein. [R. 14-1]. For the reasons below, the Kentucky Supreme Court's decision was not contrary to, nor an unreasonable application of, clearly established federal law.

The United States Supreme Court holds that the confrontation clause only guarantees "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent the defense might wish." Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1984). Applying that standard, the Court finds that the Kentucky Supreme Court's decision was not contrary to, nor an unreasonable application of, clearly established federal law.

The Kentucky Supreme Court affirmed the trial court's decision that prevented Browning from asking Ms. Smith about her hallucinations. [R. 14-1].  Citing to its own decisions that relied on the principles in <u>Ritchie</u>, the court held that Browning was given the opportunity to question Ms. Smith about any medications she was taking before, during, and after the night in question ... . [R. 14-1].  Further, the court noted that Ms. Smith testified consistently on the stand with what she had told the officers directly after the incident. [R. 14-1].  When asked on the stand about her medications, she admitted she had been on medication before, during, and after the night in question. [R. 14-1].  She also admitted to snorting pills. [R. 14-1].  For the foregoing reasons, the Kentucky Supreme Court held the trial court acted properly in limiting the scope of Ms. Smith's cross-examination. [R. 14-1].

The Court finds the Kentucky Supreme Court's decision was not contrary to, nor an unreasonable application of, clearly established federal law.  Browning was given the opportunity to review Ms. Smith's medical records and ask her anything to attack Ms. Smith's credibility. [R. 14-1].  Browning's statement that he could not question Ms. Smith about her mental health records and issues is clearly refuted by the record.  He argued that Ms. Smith's prior hallucinations would be an issue that could affect her credibility, and he was deprived due process when the court prevented questioning on the hallucinations. [R. 1].  However, as the Kentucky Supreme Court explained, the Confrontation Clause guarantees an opportunity for effective cross-examination, but does not allow cross-examination that is effective in whatever way, and to whatever extent the defense might wish.  [R. 14-14].  Browning was given the opportunity for effective cross-examination.  He was also told by the trial court that he could ask Mr. Smith about her drug use and anything that he could find to attack her credibility, such as inconsistent testimony. [R. 14-1].

Because the Kentucky Supreme Court's decision was not contrary to, nor an unreasonable application of, clearly established federal law, Browning's first claim for habeas relief fails.

**B. The Alleged Introduction of Impermissible Hearsay Evidence**

Browning next claims that he was deprived a fair trial because the Commonwealth was allowed to introduce impermissible hearsay evidence from Ms. Smith. [R. 1-2]. The Court must determine whether the Kentucky Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law. The alleged impermissible hearsay evidence arose from two (2) conversations Browning and Ance Neace had with Ms. Smith; the first occurred before the murder of Tamara Beverly and the second occurred after the murder. [R. 1-2]. Browning argues that he was deprived a fair trial because the state trial court allowed the introduction of hearsay evidence that did not fall within any exception to the hearsay rule. [R. 1-2; R. 17-3]. For the following reasons, Browning's second claim for habeas relief fails.

According to testimony in the record, there were several ongoing conversations between Browning, Neace, and Ms. Smith about killing Tamara [Beverly] to help Neace keep his child. [R. 14-14]. Ms. Smith testified that Browning and Neace had spoken with her about killing Tamara prior to the night in question. [R. 14-14]. Neace admitted during his testimony that he and Browning had discussed killing Tamara. [R. 14-14]. Ms. Smith testified that Browning and Neace had spoken with her twice on the night of the murder. During the first call, Browning claimed that, "Hazard would be a whole lot better place if that bitch were dead." [R. 14-14]. Both Ms. Smith and Neace testified that Browning and Neace had a plan to get Tamara out, do drugs, and have sex with her. [R. 14-14]. The second call came after the murder. Ms. Smith testified that Neace called her and stated he "did it" and "Jimmy [Browning] helped me." [R. 14-14]. Browning responded to Neace's

9

statement by threatening Ms. Smith that she better not tell anyone or "she would be laying up there where [Tamara] is." [R. 14-14].

As to the first call and the alleged introduction of impermissible hearsay evidence, the Kentucky Supreme Court found sufficient evidence that Browning and Neace were co-conspirators in the murder of Tamara Beverly, and Ms. Smith's testimony concerning the statements on the phone before the murder was admissible as co-conspirator statements under KRE 801A(b)(5). [R. 14-1]. Further, the Kentucky Supreme Court found the testimony concerning the telephone call after the murder was properly admitted under the excited utterances exception to the hearsay rule under KRE 803. [R. 14-1]. The court also held Neace's statement "Jimmy [Appellant] helped him" admissible as an adoption because, under the circumstances, a person would normally deny the statement. [R. 14-1].

In terms of a state court's ruling on an evidentiary issue, the Sixth Circuit has held that federal habeas corpus review of evidentiary rulings based on state law is "extremely limited." Giles v. Schotten, 449 F.3d 698, 704 (6th Cir. 2006), *cert. denied*, 127 S. Ct. 589 (2006). An issue concerning the admissibility of evidence or error in state law does not rise to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner was denied a fundamentally fair trial. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lewis v. Jeffers, 497 U.S. 764, 780 (1990); Foley v. Parker, 488 F.3d 377, 384 (6th Cir. 2007) (amended opinion); McAdoo v. Elo, 365 F.3d 487, 494 (6th Cir. 2004); see also Apanaovitch v. Houk, 466 F.3d 460, 487 (6th Cir. 2006); Spisak v. Mitchell, 465 F.3d 684, 692 (6th Cir. 2006) ("A defendant's interest in relevant evidence 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'") (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)). Furthermore, "the Supreme Court has defined

'very narrowly' the category of infractions that violates 'fundamental fairness.'" <u>Bey v. Bagley</u>, 500 F.3d 514, 522 (6th Cir. 2007) (quoting <u>Dowling v. United States</u>, 493 U.S. 342, 352 (1990)), *cert. denied*, 2008 WL 754363 (U.S. Mar. 24, 2008).

To determine whether the admission or exclusion of evidence has denied a defendant's fundamental due process rights, the habeas court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." <u>Turpin v. Kassulke</u>, 26 F.3d 1392, 1396 (6th Cir. 1994) (quoting <u>Chambers v. Mississippi</u>, 410 U.S. 284, 297, and 302 (1973)). <u>Accord</u> <u>Ege v. Yukins</u>, 485 F.3d 364, 375 (6th Cir. 2007) ("'Whether the admission of prejudicial evidence constitutes a denial of fundamental fairness turns upon whether the evidence is material in the sense of a crucial, highly significant factor.'") (quoting <u>Brown v. O'Dea</u>, 227 F.3d 642, 645 (6th Cir. 2000)); <u>Schoenberger v. Russell</u>, 290 F.3d 831, 835-836 (6th Cir. 2001) ("other acts" evidence). In <u>Holmes</u>, the Supreme Court found that a state rule excluding evidence of a third party's guilt in cases where the "prosecution's evidence *if credited*, would provide strong support for a guilty verdict," violated a criminal defendant's "'meaningful opportunity to present a complete defense.'" <u>Holmes v. South Carolina</u>, 547 U.S. 319, 330-331 (2006) (quoting <u>California v. Trombetta</u>, 467 U.S. 479, 485 (1984)).

In this case, the Kentucky Supreme Court found the trial court properly admitted the testimony of Ms. Smith under exceptions to the hearsay rule, specifically KRE 801A(b)(5) and KRE 803, 801A(b)(2). [R. 14-1]. As to the telephone conversation before the murder, the court noted that the facts in the record were sufficient to prove there was a conspiracy between Browning and Neace to harm Tamara Beverly. [R. 14-1]. Thus, the statements were made during the course and in

11

furtherance of that conspiracy. [R. 14-1].  Further, the court found the testimony concerning the telephone call to Ms. Smith after the murder was properly admitted because the statements were made while Browning and Neace were under the stress of excitement caused by the murder. [R. 14-1].  The Sixth Circuit holds that the state supreme court's factual findings made in connection with a state evidentiary issue are binding upon the federal habeas court "absent clear and convincing evidence to the contrary." Haliym v. Mitchell, 492 F.3d 680, 700 (6th Cir. 2007).  Browning has not refuted the factual findings by the Kentucky Supreme Court. [R. 14-1].  As such, the Kentucky Supreme Court's decision was not contrary to, nor an unreasonable application of, clearly established federal law, *supra*.  For the reasons above, Browning's second claim for habeas relief fails.

### C. Refusal to Instruct on Lesser Included Offense of Manslaughter based on Intoxication as a Defense to Murder.

The third claim presented by Browning is that he was denied a fair trial and due process when the trial court did not instruct the jury on the lesser included offense of manslaughter based on intoxication as a defense to murder. [R. 14-1].  He claims that there was substantial evidence to warrant a jury instruction on intoxication. [R. 1-2].  Further, his attorney requested an instruction on intoxication, as well as an instruction on the lesser included offense of second-degree manslaughter.  [R. 1-2].  Browning states that the trial court judge denied the request and the Kentucky Supreme Court, while recognizing that the intoxication defense was available, found insufficient evidence for the defense to apply. [R. 1-2].  In doing so, Browning argues the state court unreasonably applied clearly established federal law and violated his due process rights. [R. 1-2].  However, as explained below, the Kentucky Supreme Court's decision was not contrary to, nor unreasonable application of, clearly established federal law.

The United States Supreme Court holds that trial courts are not constitutionally required to instruct juries on offenses that are not lesser included offenses of the crime charged under state law. Hopkins v. Reeves, 524 U.S. 88, 94-96 (1998). When a lesser included offense does not exist under state law in a capital case, an instruction on the lesser included offense is required under the Eighth and Fourteenth Amendments only when the evidence would warrant a finding of guilt on the lesser included offense, and an acquittal on the greater offense. Hopper v. Evans, 456 U.S. 605, 611-612 (1982); Beck v. Alabama, 447 U.S. 625, 627 (1980); Bowling v. Parker, 344 F.3d 487, 500 (6th Cir. 2003); Campbell v. Coyle, 260 F.3d 531, 540 (6th Cir. 2001); accord United States v. Waldron, 206 F.3d 597, 604-605 (6th Cir. 2000) (same standard applies in all federal cases; see also Fed. R. Crim. P. 31(c)). A lesser included offense instruction is not required when the evidence does not support it. Bowling, 344 F.3d at 500; Campbell, 260 F.3d at 541; Allen v. Morris, 845 F.2d 610, 617 (6th Cir. 1988). The Constitution does not require a court to give a lesser included instruction in a non-capital case. Campbell, 260 F.3d at 541; Bagby v. Sowders, 894 F.2d 792, 795-797 (6th Cir. 1990) (plurality opinion) (en banc). So long as the state courts applied Beck[2] and its progeny, the inquiry becomes whether the state courts' denial of a lesser included instruction was objectively unreasonable under 28 U.S.C. § 2254(d)(1). Campbell, 260 F.3d at 540.

In this case, the Kentucky Supreme Court noted that, based on the record, Browning did not prove he was out of control or so intoxicated, thus negating the element of intent to cause the death of Tamara [Beverly]. [R. 14-1]. The court also found the following:

> There was testimony that Browning admitted to killing Tamara, and he remembered enough to describe how she was "laying on the ground shaking" and although "Ance told him to stop," he knew "she was going to die anyway," so he "held her under until she drowned." Further, an expert for Browning testified that a mixture of drugs

_____

[2]Beck v. Alabama, 447 U.S. 625 (1980).

and sex would cause someone to fall asleep. However, Browning did not prove that he was so "out of control" that he did not know what was going on around him. Browning admitted to snorting pills and drinking whiskey on the night in question, but he did not prove that this was so out of his normal routine or that drugs caused him to be so intoxicated that he did not know what he was doing. Simply stated, Browning was aware enough to drive to Tamara's, find his way up the mountain to the strip job site at night, have sex with Tamara, remember getting out of the car, and most of the details that happened thereafter. Even after the murder, he demonstrated knowledge that what he did was wrong by threatening Ms. Smith not to tell anyone or she would be killed too.

[R. 14-1].

The Kentucky Supreme Court found the trial court's decision to be correct; Browning did not show he was so out of control or intoxicated to warrant an instruction a lesser included offense. [R. 14-1]. Relying on Brown v. Commonwealth, 555 S.W.2d 252, 257 (Ky. 1997), the court noted that a trial court may instruct on a lesser included offense when the evidence presented "justif[ies] a doubt based on the theory that the crime committed was of a lower degree or lesser culpability." Browning is correct that intoxication can be a defense to murder. [R. 17-3]. However, based on the evidence the court found that he was not intoxicated enough to negate the element of intent. [R. 14-1]. The Kentucky Supreme Court found the evidence did not support an instruction of a lesser included offense. [R. 14-1]. The court's decision was not contrary to, nor an unreasonable application of, clearly established federal law.

### D. Alleged Mishandling of the Guilty Plea

Browning next contends that he was denied due process when Judge Combs rejected the Commonwealth's sentencing recommendation in his plea agreement. [R. 14-1]. The Court's review is limited to the determination of whether the Kentucky Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law. The court addressed and rejected the issue, stating the following:

14

Judge Combs did accept the plea.  However, he made it clear during the hearing that he was not bound by the sentencing recommendation and that he could impose a much harsher punishment on the Appellant [Browning] at sentencing.  Ultimately, Judge Combs ruled he would impose a greater sentence than recommended in the agreement, but then allowed Appellant to withdraw his plea.

The plea bargaining process is an essential component of the administration of justice, and "if the court has reasonable grounds for believing that acceptance of the plea would be contrary to the sound administration of justice, it may reject the plea." Hoskins v. Maricle, 150 S.W.3d 1, 25 (Ky. 2004).  "A 'sentence bargain' is an agreement in which the prosecutor agrees to recommend or not to oppose a particular sentence in exchange for a guilty plea to the original charge." Id. at 22.  "Since sentencing is a function of the judiciary, a judge's discretion to accept or reject a sentence bargain is unfettered." Id.

Although the trial court accepted the plea, it expressly stated on the record that it did not have to accept the sentence proposed in the plea agreement.  The trial court unambiguously stated the sentence could include a minimum sentence of 20 years and a maximum of life in prison.  On the record, the Appellant stated that he understood that the court could impose a harsher penalty than the sentence recommended.

When the trial court rejected the sentence recommendation, it gave several reasons for its decision.  The trial court justified its rejection by expressing concerns it had about how the original prosecutor handled the case.  Also, the court was concerned that Bowling's agreement to testify truthfully against Neace was never in writing and included in the plea.

After rejecting the sentence recommendation, the trial court gave the Appellant the opportunity to withdraw his plea and proceed to trial.  The Appellant did so and a trial was set.  There was no error.

[R. 14-1].

Browning argues that both he and the trial court judge accepted the plea agreement, and under clearly established federal law, the trial court is bound by the bargain and the defendant is entitled to enforce the bargain. [R. 17-3].  Moreover, Browning's argument focuses on the alleged ex parte contact between the trial judge and the Kentucky Attorney General's office. [R. 17-3].  In his reply, Browning goes into great detail outlining the alleged improper communications between

Judge Combs and the Attorney General's office. [R. 17-3]. However, as previously stated, the Court is only concerned with whether the decision made by the Kentucky Supreme Court was contrary to, or an unreasonable application of, clearly established federal law. This is not a review of the merits of Browning's claims because they have already been adjudicated. [R. 14-1].

In affirming the trial court's decision, the Kentucky Supreme Court relied on the principle that a judge has discretion to accept or reject a recommended sentence within a plea agreement. Hoskins v. Maricle, 150 S.W.36 1, 25 (Ky. 2004). The court's reliance on Hoskins is sound; in Freeman v. U.S., 131 S. Ct. 2685, 180 L.Ed.2d 519 (2011), the Supreme Court noted that the rule governing plea agreements permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion in imposing a sentence.

In this matter the court accepted the plea, but expressly stated on the record that it was not required to accept the sentence proposed in the plea agreement. [R. 14-14]. Further, Browning stated that he understood that the court could impose a harsher penalty than the sentence recommended. [R. 14-14]. When the trial court rejected the sentencing recommendation it gave several reasons; including concerns about how the original prosecutor handled the case, and Browning's agreement to testify truthfully against Neace was never in writing and included in the plea. [R. 14-14]. Because the Kentucky Supreme Court's decision was not contrary to, nor an unreasonable application of, clearly established federal law, Browning has no claim for federal habeas relief.

### E. Ineffective Assistance of Counsel

Browning's last three (3) claims involve alleged instances of ineffective assistance of

counsel. [R. 1-2].   To reiterate, the Court's review of Browning's petition is limited to the determination of whether the state court's decision was contrary to, or an unreasonable application of, clearly established federal law.   The first two (2) claims were presented to the Kentucky Court of Appeals through Browning's RCr 11.42 motion. [R. 14-19].   Browning's last claim of ineffective assistance of counsel has been presented to this Court for the first time. [R. 14-1].   All three (3) claims will be addressed in turn.

In the case below, the Kentucky Court of Appeals articulated the legal standard for Browning's claims of ineffective assistance of counsel as follows:

> In order to prevail on an ineffective assistance of counsel claim, a movant must affirmatively prove that his "counsel's performance was deficient" and that the deficiency prejudiced the case.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).   A reviewing Court should be highly deferential in scrutinizing counsel's performance and must evaluate the particular facts of the case and determine whether the acts or omissions were "outside the wide range of professionally competent assistance" to the extent that the errors caused the "adversarial testing process" not to work.  Id. at 690, 104 S. Ct. at 2066.  To prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." Id. at 694, 104 S. Ct. at 2068.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

[R. 14-19].

Under 28 U.S.C. § 2254(d), the Court must determine whether the Kentucky Court of Appeals' application was contrary to, or an unreasonable application of, Strickland because his claims were previously adjudicated on the merits.   Simply stated, the Court's review is limited to the determination of whether the Kentucky Court of Appeals' decision was consistent with controlling federal law.   Here, the controlling federal law is the two part test properly articulated by the Kentucky Court of Appeals above as announced in Strickland.   For the following reasons, the Court finds that the state court's rulings on Browning's claims was not contrary to, nor an

17

unreasonable application of, <u>Strickland</u>.

### 1. Failure to Protect Browning's Right to a Speedy Trial

Browning's first claim of ineffective assistance of counsel involves his right to a speedy trial. [R. 1-2]. He argues that there was a twenty-eight (28) month delay between the time he was arrested and indicted, and when the case ultimately went to trial. As a result of the delay, Browning states he did not receive a speedy trial. [R. 1-2]. The Kentucky Court of Appeals addressed and rejected the issue, stating the following:

> First, we find that the record conclusively refutes Browning's claim that his counsel was constitutionally deficient for failing to ensure his right to a fast and speedy trial. The record reveals that Browning's counsel did in fact file a motion for a speedy trial on December 11, 2001, and also filed two separate motions to dismiss based upon the right to a speedy trial. The first of these motions was filed on August 27, 2002. The second was filed on June 2, 2003. Thus, there is no factual basis for his claim of ineffective assistance on this issue, and the record conclusively establishes that the endeavors of the trial counsel in this regard were well within the wide range of professionally competent assistance. Browning's counsel may not be deemed ineffective merely because the judge denied the motions to dismiss.

[R. 14-19].

Under 28 U.S.C. § 2254(d), the Court's review is limited to the determination of whether the Kentucky Court of Appeals' decision was contrary to, or an unreasonable application of, <u>Strickland</u>. As the lower court noted, the record clearly refuted Browning's argument of ineffective assistance of counsel. He argues that the state court failed to apply the <u>Strickland</u> standard; however, the court used language from <u>Strickland</u> in denying his claim. [R. 1-2; R. 14-19]. The record reveals that counsel filed three (3) motions concerning Browning's right to a speedy trial. [R. 14-19]. The lower court found counsel's actions to fall well within the wide range of professionally competent assistance. [R. 14-19]. Because the Kentucky Court of Appeals' decision was not contrary to, nor an unreasonable application of, <u>Strickland</u>, Browning's first claim of ineffective assistance of

18

counsel fails.

## 2. Failure to Object to Prejudicial Photographs

The next claim of ineffective assistance of counsel involves the introduction of photographs. Browning argues that counsel should have objected to the photographs that showed the pond where Tamara Beverly was murdered. [R. 1-2]. As basis for his claim, Browning believes the pictures "were taken from a deceptive angle that makes it appear there is a substantial distance from the ground to the rim of the pond." [R. 1-2]. Moreover, he states that the "pictures are important because they create the impression that it would require at least two people to lift a heavy object, such as a body, from the ground into the pond." [R. 1-2]. Finally, Browning argues "[t]his impression would corroborate the prosecution's theory that Browning assisted Neace in placing the body in the pond." [R. 1-2].

Browning presented the same claim in the RCr 11.42 motion to the Kentucky Court of Appeals. [R. 14-19]. The court addressed the issue as follows:

> Second, we find no basis for Browning's claim that his counsel should have objected at trial to one of the evidence photos, which depicts a steep embankment leading up to the pond where Tamara Beverly's body was found. The record conclusively establishes that the decision not to object to the evidence was neither constitutionally deficient nor prejudicial. With regard to deficiency of counsel, there is no indication that the photo is an inaccurate depiction of the crime scene nor that it misled the jury. In fact, it is entirely consistent with all the other, seemingly non-objectionable photos. It seems incredibly unlikely that any attempt to exclude the photo would have succeeded. As is noted in <u>Freeman</u>, 697 S.W.2d 133, an attorney's decision not to have present a specific argument cannot be ineffective assistance if that argument would have been meritless. With regard to prejudice, the record establishes the photo was not prejudicial because the exclusion of the photo would not have prevented Browning's conviction. Although the photo was used at trial to indicate that Browning must have helped Ance Neace (Neace) dispose of the body in the pond, there is other, independently sufficient evidence to establish the same fact, specifically the testimony of Neace. We believe there was ample evidence in this case, outside of the photo, to convict Browning, and its inclusion does not undermine reasonable confidence in the outcome of the case.

[R. 14-19].

The Kentucky Court of Appeals' application of <u>Strickland</u> was reasonable.  With Neace's testimony, any objection to the photographs in question would have been meritless.  The reviewing court's scrutiny of counsel's performance is highly deferential, <u>Strickland</u>, 466 U.S. at 689.  Indeed, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690.  The court must also not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors.  <u>Id.</u>  As the state court correctly noted, the record established the photo was not prejudicial because the exclusion of the photo would not have prevented Browning's conviction. [R. 14-19].  As a result, the Kentucky Court of Appeals' application of <u>Strickland</u> was reasonable, and Browning's second claim of ineffective assistance of counsel fails.

### 3. Failure to Raise Speedy Trial Violation on Direct Appeal

Browning's third claim of ineffective assistance of counsel is raised for the first time in this petition. [R. 1-2].  He claims that direct appeal counsel performed ineffectively by failing to raise a speedy trial violation on direct appeal. [R. 14-1].  As noted both by Browning and the Respondent, trial defense counsel was also direct appeal counsel. [R. 1-2; R. 14-1].  Browning argues that the issue of a speedy trial was significant because had it been resolved in his favor, it would have had a major impact on whether the case went to trial. [R. 1-2].  For the following reasons, counsel was not ineffective for failing to raise the issue of a speedy trial violation on direct appeal.

Unlike the previous two (2) claims of ineffective assistance of counsel, *supra*, Browning raises this issue for the first time in his § 2254 petition. [R. 1-2].  Because this claim was not decided

by the state courts below, the Court's review is to determine whether Browning has established a claim of ineffective assistance of counsel under the legal standard announced in Strickland.

To establish ineffective assistance of counsel, it must be shown that counsel's performance was deficient and that the deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable.  Strickland, 466 U.S. at 687.  A comparable test applies to claims of ineffective assistance of appellate counsel.  Smith v. Jago, 888 F.2d 399, 405 n.1 (6th Cir. 1989); Bowen v. Foltz, 763 F.2d 191, 194 (6th Cir. 1985).  The reviewing court's scrutiny of counsel's performance is highly deferential, Strickland, 466 U.S. at 689.  Indeed, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690; accord Bigelow v. Williams, 367 F.3d 562, 570 (6th Cir. 2004); Mallett v. United States, 334 F.3d 491, 497 (6th Cir. 2003); O'Hara v. Wigginton, 24 F.3d 823, 828 (6th Cir. 1994).  The court must also not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors.  Strickland, 466 U.S. at 690; Cobb v. Perini, 832 F.2d 342, 347 (6th Cir. 1987).  Indeed, trial counsel's tactical decisions are particularly difficult to attack, O'Hara, 24 F.3d at 828, and a defendant's challenge to such decisions must overcome a presumption that the challenged action might be considered sound trial strategy.  Darden v. Wainwright, 477 U.S. 168, 185-187 (1986); Bigelow, 367 F.3d at 570; Bugh v. Mitchell, 329 F.3d 496, 513 (6th Cir. 2003).

In this case, Browning argues that counsel's decision not to raise the issue of his right to a speedy trial established deficient performance on the part of counsel. [R. 1-2].  He bases his argument on the assertion that the speedy trial issue was stronger than the other issues actually raised

by counsel on direct appeal. [R. 1-2].  In concluding that counsel rendered ineffective assistance, Browning cites to an eleven (11) factor test set forth in <u>Mapes v. Coyle</u>, 171 F.3d 408, 427 (6th Cir. 1999).  However, as previously stated, the Sixth Circuit relies on the <u>Strickland</u> analysis to determine whether counsel performed ineffectively, *supra*.  Based on the following, Browning fails to demonstrate a deficient performance by counsel.

Browning was arrested in April, 2001, and ultimately convicted in August, 2003. [R. 14-1]. Browning's counsel filed a motion for speedy trial on December 11, 2001, and three (3) subsequent motions on August 21, 2002, August 27, 2002, and June 2, 2003, re-raising the speedy trial issue. [R. 14-1].  Acknowledging the fact that any delay caused by plea negotiations "should be equally attributable to both the state and to Browning," he then focuses on the delay between August, 2002, through January, 2003. [R. 14-1].  This delay, Browning asserts, must be totally attributed to the state. [R. 14-1].

As noted by Respondent, the plea was put off, *inter alia*, to allow the lead detective on the case to be present and to avoid sentencing Browning prior to him testifying against the co-defendant, Ance Neace. [R. 14-1].  When Browning's guilty plea was finally entered on December 18, 2002, entry of the judgment was postponed pending a pre-sentence investigation report and final sentencing was scheduled for January 22, 2003, where the trial court ultimately rejected the plea. [R. 14-1].  Browning's first trial then began three (3) months later, on April 14, 2003. [R. 14-1]. Due to a number of jury challenges the trial was stopped on April 15th, and the trial court ruled the case should be tried in another venue. [R. 14-1].  The second trial ultimately began on August 5, 2003, approximately six and one half months after the rejection of the plea agreement. [R. 14-1].

As to prejudice, Browning alleges the delay "ultimately cost Browning the beneficial plea

22

agreement with a twenty (20) year sentence." [R. 14-1].  To satisfy the prejudice prong of the

Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine confidence in the outcome."

Strickland, 466 U.S. at 694; accord Nix v. Whiteside, 475 U.S. 157, 175 (1986); Mallet, 334 F.3d

at 497.  Here, Browning makes no such showing.  The record clearly reflects that the trial court

rejected the plea agreement when it decided to sentence Browning to the maximum sentence, rather

than the twenty (20) year sentence recommended by the prosecutor. [R. 14-1].  As a result,

Browning chose to withdraw his plea of guilty and go to trial. [R. 14-1].  Further, the rejection of

the plea agreement by the trial court came as no surprise to Browning, as the trial court consistently

indicated on the record it was not comfortable with the plea agreement. [R. 14-1].  Based on those

reasons, Browning was unable to demonstrate a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.  As such, Browning's

third claim of ineffective assistance of counsel fails.

## V. CONCLUSION

Accordingly, and for the reasons stated above, it is hereby recommended that Browning's

§ 2254 Petition for a Writ of Habeas Corpus [R. 1] be DENIED.

Specific objections to this Report and Recommendation must be filed within fourteen (14)

days from the date of service thereof or further appeal is waived.  United States v. Campbell, 261

F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d

737, 749-750 (E.D. Ky. 2002).  General objections or objections that require a judge's interpretation

are insufficient to preserve the right to appeal.  Cowherd v. Million, 380 F.3d 909, 912 (6th Cir.

2004); <u>Miller v. Currie</u>, 50 F.3d 373, 380 (6th Cir. 1995).  A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P 72(b).

Signed March 27, 2012.



Signed By:

*Edward B. Atkins*

United States Magistrate Judge

24