UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JIMMY BROWNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 09-423-GFVT |
| V. | ) | |
| | ) | |
| JOSEPH MEKO, | ) | |
| *Warden, Little Sandy Correctional* | ) | **ORDER** |
| *Complex* | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

Before the Court is the Magistrate Judge Atkins' Report and Recommendation
[R. 19] regarding the *pro se* action filed by Jimmy Browning for a Writ of Habeas Corpus
pursuant to 28 U.S.C. § 2254 challenging his state court sentence. In accordance with
local practice, this matter was referred to Judge Atkins for initial screening and
preparation of a Report and Recommendation. Judge Atkins recommends that
Browning's section 2254 petition be denied. Browning objects to several findings within
Judge Atkins' recommended disposition, and his objections trigger the Court's duty to
conduct a *de novo* review. *See* 28 U.S.C. § 636(b)(1)(C). By reviewing the entire record,
including the pleadings, the parties' arguments, relevant case law, statutory authority, and
procedural rules, the Court has satisfied this obligation. For the following reasons his
objections will be OVERRULED.

**I**

Judge Atkins' recommended disposition accurately lays out the factual and
procedural background of the case. Besides what the Court augments in its discussion

1

below, it has nothing to add and therefore incorporates Judge Atkins' discussion of the record.  It is, however, important to note at the outset that this was a murder case tried in Perry County, Kentucky.  At the end of trial, Browning was found guilty of one count of complicity to murder and one count of complicity to tamper with physical evidence.  His claims arise from that litigation.

## II

### A

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, governs federal habeas review.  It reads, in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of,  clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented int eh State court proceeding.

28 U.S.C. § 2254(d).  To be clearly established law, the law relied on by the petitioner must be law that was clearly established at the time the state court decision became final, not afterward. *Williams v. Taylor,* 529 U.S. 362, 380.  To find a state court's application of Supreme Court precedent unreasonable under 28 U.S.C. § 2554, the state court's decision must have been objectively unreasonable. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003); *Williams,* 529 U.S. at 409 (explaining, "[s]tated simply, a federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable.").

2

A state court decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant a writ of habeas corpus "simply because the state court issued a decision that erroneously or incorrectly applies clearly established law; rather, the state court's application of law must have been objectively reasonable." *Ware v. Renico*, 371 F.3d 862, 865 (6th Cir. 2004) (citing *Williams*, 529 U.S. at 410-11).

**B**

Magistrate Judge Atkins determined that the decisions rendered by the Kentucky Supreme Court and the Kentucky Court of Appeals were neither contrary to, nor an unreasonable application of, clearly established federal law. Moreover, they were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Nevertheless, Browning takes exception to some of the Magistrate Judge's findings. To be more specific, he puts forth five objections to the report and recommendation. The Court will address each objection in turn.

**1**

First, Browning objects to the Judge Atkins' reliance on *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987), with respect to whether his right to cross-examine Ms. Smith was adequately protected. According to Browning, relying on *Ritchie* is an "unreasonable application of clearly established federal law as it [pertains] to [Browning's] case." [R. 22, at 1-2.] Moreover, he asserts that he was not attempting to search for unknown facts, like the defendant in *Ritchie*. Rather, Browning asserts that he was attempting to bring to

3

light Ms. Smith's inability to comprehend or recall certain events.  [*Id.* at 2.]  He claims

that *Ritchie* involves pre-trial discovery issues with respect to records of a state child

protection service whereas his complaint relates to his inability to effectively impeach

Ms. Smith, the government's witness.  [*Id.* at 2.]

 Browning focuses on the specific facts of the *Ritchie* case, but the proposition set

forth in *Ritchie* and relied on by both the Kentucky Supreme Court and the Magistrate

Judge in rendering their decisions is a general proposition that has application beyond the

facts of that case.  The *Ritchie* court's assertion that, "the Confrontation Clause only

guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is

effective in whatever way, and to whatever extent, the defense might wish,' " 480 U.S. at

53 (emphasis in original), is not tied to any specific set of facts.  Notably, in *Ritchie*, the

Supreme Court incorporated the quoted proposition from a prior ruling, *Delaware v.

Fensterer*, 474 U.S. 15 (1985).  480 U.S. at 53.

 Browning must understand that although the right of the accuser to cross-examine

exists and is protected by the Sixth Amendment, it is not absolute.  It does not prevent "a

trial judge from imposing any limits on defense counsel's inquiry into the potential bias

of a prosecution witness."  *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).  It is in

the purview of a trial judge to "impose reasonable limits on such cross-examination based

on concerns about, among other things, harassment, prejudice, confusion of the issues,

the witness' safety, or interrogation that is repetitive or only marginally relevant."  *Id.* at

679.

 Browning wanted to raise questions about Ms. Smith's credibility by drawing

attention to her comprehension skills and her ability to recall specific events.  The record

4

indicates that the trial court did not prohibit this line of questioning. Browning does not

deny he was afforded this opportunity, but instead argues he should have been allowed to

ask about alleged hallucinations suffered by Ms. Smith. According to the state supreme

court, the trial judge ruled that the hallucinations Ms. Smith experienced were not the

type that would prevent her from comprehending or recalling conversations that she had

with Browning and Neace. This court will not dispute this finding because a state

supreme court's factual findings made in connection with a state evidentiary issue are

binding upon the federal habeas court unless there exists clear and convincing evidence

to the contrary. *Evans v. Mitchell*, 344 Fed.App'x. 234, 239 (6th Cir. 2009); *Haliym v.

Mitchell*, 492 F.3d 680, 700 (6th Cir. 2007). Browning has not offered any evidence to

refute the trial court or the Kentucky Supreme Court's finding, therefore the Kentucky

Supreme Court's findings with respect to this issue, and its decision was not contrary to,

nor an unreasonable application of, clearly established law.

**2**

Browning's next objection is based on the finding by both the Kentucky Supreme

Court and the Magistrate Judge that he was not "out of control" or "so intoxicated" for

purposes of an instruction from the trial court on the lesser included offense of

manslaughter based on intoxication. KRS 501.080(1) provides that voluntary

intoxication is a defense to a criminal charge if it negates the existence of an element of

the offense. Based on Kentucky case law, "[t]he defense is justified only where there is

evidence reasonably sufficient to prove that the defendant was so intoxicated that he did

not know what he was doing." *Rogers v. Commonwealth*, 86 S.W.3d 29, 44 (Ky. 2002).

The Kentucky Supreme Court determined that Browning had not provided

sufficient evidence as to his level of intoxication so as to compel the trial court to instruct on the lesser-included offense.  [R. 14-14, at 8.]  Browning, however, contends that the application or reliance on this standard "is an unreasonable application of clearly established Federal law."  [*Id.*]  According to Browning, the testimony relied on by the Kentucky Supreme Court is from an admitted liar, Mr. Kilburn.  [*Id.*]  He submits that on several occasions Mr. Kilburn admitted to fabricating parts of his story.  [*Id.*]  Additionally, Browning cites to *Taylor v. Withrow*, 154 F.Supp.2d 1037, 1043 (E.D. Mich. 2001) (*overruled on other grounds)* for the proposition that "[a] defendant is entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor."  He contends that the jury is fact-finder, and is the arbiter of guilt and innocence.  [*Id.*]  He claims that "[e]vidence was presented by both the Defense and the Prosecution's witness' that the Petitioner was highly intoxicated, to the point [where] he actually lost consciousness."  [*Id.* at 2-3.] Therefore, he surmises, that an intoxication instruction should have been given to the jury, so as to allow the fact-finder to consider such evidence.  [*Id.* at 3.]

        This Court agrees with the proposition from *Taylor*, but does not conclude that Browning established sufficient evidence to have the jury instructed on the lesser-included offense.  Based on the evidence before the trial court, the Kentucky Supreme Court found that the record did not support an instruction of a lesser-included offense.

        Browning references the testimony of a Mr. Kilburn, and suggests that he was dishonest, but proffers no proof to substantiate this claim.   Nonetheless, even if the Court disregarded that testimony, Browning still did not meet his burden of providing sufficient evidence to establish that he was "so intoxicated" that he could not form the intent

element of the complicity to murder charge.  *See Jewell v. Commonwealth*, 549 S.W.2d 807, 812 (Ky. 1977) ("[t]here must be something in the evidence reasonably sufficient to support a doubt that the defendant knew what he was doing.").  There was ample evidence relied on by the Kentucky Supreme Court indicating that Browning was able to function and was self-aware even when using a significant amount of drugs and alcohol. [R. 14-14, at 9.]  Again, "factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-EV v. Cocknell*, 537 U.S. 322, 324 (2003).  Browning has been unable by clear and convincing evidence to refute the Kentucky Supreme Court's determination and,consequently, this objection must be overruled.

**3**

Browning also objects to Judge Atkins' finding that the Kentucky Supreme Court's reliance on *Hoskins v. Maricle*, 150 S.W.3d 25 (2004), with respect to the acceptance of the plea agreement was a reasonable application of clearly established law. [R. 22, at 3.]  He claims that *Hoskins* does not apply here because the question there was "whether it was an abuse of [discretion] to reject a plea agreement due to the sentence being too lenient."  [*Id.*]  He also argues that *Freeman v. United States*, 131 S. Ct. 2685, 180 L. Ed. 2d 519 (2011) is inapposite too.  According to him, the *Freeman* court addressed the issue of "whether a defendant could modify the terms of his plea based on a change in the Sentencing Reform Act, after the Court had already imposed the sentence." [*Id.*]  Browning opines that the question here is "whether the Judge can accept a plea agreement, and five months later reject the terms of the sentence."  [*Id.*]  He argues that Judge Combs gave his unqualified acceptance of the plea agreement, and he is therefore

7

bound to honor that agreement.  [*Id.* at 4.]

First, the Court does not need to consider whether the Kentucky Supreme Court's reliance on *Hoskins* was appropriate.  The Court's role here is to determine whether the state court's decision violated clearly established federal law.  To this end, Browning has misunderstood the intended application of *Freeman* by the Magistrate Judge.  *Freeman* was not cited because its facts were similar to the facts presented here.  Rather, it was cited for the general proposition that the rule governing plea agreements permits the defendant and the prosecutor to agree that a specific sentence is appropriate, but that agreement does not discharge the district court's independent obligation to exercise its discretion in imposing a sentence.  *See Freeman*, 131 S. Ct. at 2692.

Now, there are some instances in federal court in which a trial judge may be bound to sentence within a certain range pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  However, neither the record nor the parties characterize the plea agreement here as a binding document.  Judge Combs accepted the plea agreement, but stated on the record that he was not bound by the sentence recommended in the agreement.  [R. 14-14, at 10.]  Without evidence showing that there was a binding plea agreement, the normal rules regarding plea agreements apply, and the *Freeman* court's general proposition that trial judges have discretion in imposing sentences controls.  *See also Mabry v. Johnson*, 467 U.S. 504, 507 n. 5 (1984) (Supreme Court noting that "there is a critical difference between an entitlement and a mere hope or expectation that the trial court will follow the prosecutor's recommendation."); *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977) (wherein the Supreme Court explains that there is no constitutional right to plea bargain).  Based on the record before the Court, there is no indication that the Kentucky Supreme

Court's determination was in contravention of federal law.  Therefore, this objection must be overruled.

### 4

With respect to his objection regarding the ineffectiveness of his counsel in handling the speedy trial issue, Browning argues that the Kentucky Court of Appeal's determination that the filing of three motions over the span of two years was within professional norms in accordance with *Strickland v. Washington*, 466 U.S. 668 (1984) is simply wrong.  [R. 22, at 4.]  He asserts that the *Strickland* test was unreasonably applied in contravention of clearly established Federal law.

In *Wiggins v. Smith*, 539 U.S. 510 (2003) the Supreme Court aptly summarized the ineffective assistance of counsel standard set forth under *Strickland*.  That standard is as follows:

> An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense.  To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness."  We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

*Wiggins*, 539 U.S. at 521 (internal citations omitted).  Based on this standard, the Kentucky Court of Appeals did not find that Browning's counsel was ineffective.  It pointed to three specific motions filed by his counsel as evidence of his professional competence.  [R. 14-19, at 3.]  Moreover, the court opined that he "may not be deemed ineffective merely because the judge denied the motions to dismiss."  [*Id.*]

This Court agrees with the finding of the appeals court.  In his objection,

Browning does not assert a specific allegation of ineffective assistance of counsel except to say that based on his own subjective standard the filing of three motions over two years is unacceptable.  The teachings of the Supreme Court neither reflect nor adopt such a stringent subjective standard.  Under the *Strickland* analysis, "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S. at 689.  The Court of Appeals adhered to this standard and thus this objection must be overruled.

**5**

His final objection relates to the finding that his counsel was not ineffective when he allowed, without challenge, the admission of photographs that distorted the true condition of the crime scene, and in his estimation made it easier for the jury to believe that he helped dispose of Beverly's body.  He proffers that "had Counsel objected to these photos there is a possibility that any reasonable juror could have made a decision in favor of the petitioner."  [R. 22, at 5.]  He asserts that the jury was "[misled] by the angles of these photos along with questions to various witness[es] 'would it be easier for one or two people to place a body in this pond.' "  [*Id.*]  He argues that because Counsel did not object, he made an error of magnitude so great "that there is no possibility that his performance fell within any range of competent or [professional] norms."  [*Id.* at 6.]

As previously stated, clearly established federal law requires a petitioner satisfy the two prong test in *Strickland* in order to state a claim for ineffective assistance of counsel. 466 U.S. at 687. The Court may consider just one part of the test, usually

10

prejudice, since the test is conjunctive. *Id.* at 697.

The Kentucky Court of Appeals determined that there was "no basis for Browning's claim that his counsel should have objected at trial to one of the evidence photos" depicting "a steep embankment leading up to the pond where Tamara Beverly's body was found." [R. 14-19, at 4.]  Further, they found it "incredibly unlikely that any attempt to exclude the photo would have succeeded."  [*Id.*]  Finally, the court concluded that because of the remaining evidence, the photo was not prejudicial because the exclusion of the photograph would not have prevented Browning's conviction.

The Court of Appeals' ruling was neither contrary to nor an unreasonable application of federal law.  Exclusion of the photograph would not have changed the outcome for Browning.  As noted by the Kentucky Court of Appeals, Neace's testimony that Browning had helped him dispose of the body established that fact for the jury.  [R. 14-19, at 4.]  The absence of a photograph would not have made that testimony any less detrimental to Browning.  Therefore, this objection must be overruled.

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)     Browning's Objections to the Magistrate Judge's Report and Recommendation [R. 22] are **OVERRULED**;

(2)     The Magistrate Judge's Report and Recommendation [R. 19] is **ADOPTED** as and for the opinion of this Court; and

(3)     Browning's Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**.

11

This 28th day of March, 2013.

Signed By:

*Gregory F. Van Tatenhove*

United States District Judge